RENDERED:  OCTOBER 30, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1073-MR

BUCKHORN RESOURCES, LLC                    APPELLANT


               APPEAL FROM LESLIE CIRCUIT COURT
v.           HONORABLE OSCAR GAYLE HOUSE, JUDGE
               ACTION NO. 09-CI-00256


COMBS HEIRS, LLC; SAMUEL L. COMBS;
LAURA COMBS; B.C. NOLAN TRUST BY
VIRGINIA NOLAN CRAFT; CATHERINE B.
NOLAN BY VIRGINIA NOLAN CRAFT;
FRANK PETERS; PATRICIA S. PETERS;
AND ICG HAZARD, LLC                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE:  Buckhorn Resources, LLC, ("Buckhorn") appeals from the

judgment declaring its property deeds void as champertous and awarding royalties

for coal mining by ICG Hazard, LLC, ("ICG") on the property to Combs Heirs,

LLC; Samuel L. Combs; Laura Combs; B.C. Nolan Trust by Virginia Nolan Craft; Catherine B. Nolan by Virginia Nolan Craft; Frank Peters; and Patricia S. Peters ("Combs Heirs") entered on June 5, 2018,[1] by the Leslie Circuit Court. Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On October 21, 2009, the Combs Heirs sued ICG for unpaid royalties for coal mining on their property. The heirs attached an unsigned memorandum of lease agreement, which was also undated beyond indicating the year was 2000,[2] to their complaint. This memorandum identified the property as:

> located on the waters of Coal Branch and Long Fork of Langdon Branch, tributaries of the Middle Fork of the Kentucky River, in Leslie County, Kentucky, said property (i) being more particularly described on Exhibit A attached hereto, (ii) being shown on the map attached as Exhibit B to the Agreement (as defined below), and (iii) being hereinafter referred to as the "Leased Premises[.]"

However, neither Exhibit A nor B was made a part of the record.

---

[1] The circuit clerk mistakenly indicated that this order was entered on May 5, 2018, although it was signed and dated by the trial court on June 5, 2018. Buckhorn subsequently moved the trial court to correct the record on appeal (on July 3, 2019) to reflect the June 5, 2018, date of this order, which was granted (on August 22, 2019).

[2] This lease was between the Combs Heirs and Leslie Resources. The parties allege the lease was entered on February 9, 2000. ICG replaced Leslie Resources as the lessee on September 30, 2005.

On December 1, 2009, ICG moved the trial court for leave to join Buckhorn as a party to this action, asserting that ICG had competing coal mining leases with the Combs Heirs, as well as Buckhorn, for what it referred to as the "Dr. Combs Property." Along with this motion, ICG tendered a counterclaim against the Combs Heirs and Buckhorn seeking a declaratory judgment to determine the proper recipient of the disputed coal mining royalties. The following day, the court entered two agreed orders: the first required that ICG deposit the disputed royalties with the court pending resolution of this matter, and the second granted ICG's motion for leave to join Buckhorn as a counterclaim defendant. The Combs Heirs answered ICG's counterclaim, alleging Buckhorn's claim "is barred by champerty and a complete failure of title, if any[.]" Buckhorn counterclaimed against ICG for its failure to pay royalties pursuant to the coal mining lease dated September 1, 2009.

Nearly seven years later, the Combs Heirs moved the trial court for summary judgment. The Combs Heirs asserted that this case involved approximately 440 acres of land on the Coal Branch of the Middle Fork of the Kentucky River in Leslie County, Kentucky, of which they claimed their family had possession for over 100 years. They further asserted that the principles of res judicata and collateral estoppel entitled them to judgment as a matter of law

because Buckhorn's 2005 deeds had been declared void for champerty in two other circuit court cases.[3]

On June 5, 2018, the court entered its judgment finding the prospecting, core-drilling, and mining constituted sufficient evidence of possession to void Buckhorn's deeds as champertous under KRS[4] 372.080. The court also awarded the unpaid coal mining royalties to the Combs Heirs. Buckhorn moved the court to alter, amend, or vacate its order pursuant to CR[5] 59.01(f). While this motion was pending, Buckhorn filed its notice of appeal.[6] The court subsequently denied Buckhorn's motion to alter, amend, or vacate.

**NONCOMPLIANCE WITH RULES OF APPELLATE PROCEDURE**

Another panel of our Court has recently addressed the growing problem of noncompliance with the rules of appellate practice.

> This Court is weary of the need to render opinions such as this one, necessitated as they are by the failure of appellate advocates to follow rules of appellate advocacy. In just the last two years, at least one hundred and one

---

[3] By order of the Perry Circuit Court, Action No. 08-CI-00073, entered November 27, 2012, the court found Leslie Resources was in actual possession of at least portions of the area in dispute; therefore, it found the portion of the deed relating to that property in Perry County void for champerty. By order of the Leslie Circuit Court, Action No. 08-CI-00023, entered August 11, 2014, the court found "the deed" from East Kentucky Land Corporation to Buckhorn void for champerty.

[4] Kentucky Revised Statutes.

[5] Kentucky Rules of Civil Procedure.

[6] The Supreme Court of Kentucky has found the premature notice of appeal related forward, citing CR 73.02(1)(e)(i). *Johnson v. Smith*, 885 S.W.2d 944, 950 (Ky. 1994).

(101) Kentucky appellate opinions were rendered in which an attorney's carelessness made appellate rule violations an issue in his or her client's case. The prodigious number of attorneys appearing in Kentucky's appellate courts lacking the skill, will, or interest in following procedural rules is growing. In 2005, only two (2) Kentucky opinions addressed appellate rules violations. In 2010, the number jumped to eleven (11). In 2015, the number rose slightly to fourteen (14). The average for the last two years is more than three times that. If this is not a crisis yet, it soon will be if trends do not reverse.

We will not reiterate all that has been said too many times before on this subject. If a lawyer is curious about the importance of these procedural rules or the practical reasons for following them, we recommend reading these opinions in chronological order: *Commonwealth v. Roth*, 567 S.W.3d 591 (Ky. 2019); *Koester v. Koester*, 569 S.W.3d 412 (Ky. App. 2019); *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010); *Elwell v. Stone*, 799 S.W.2d 46 (Ky. App. 1990).

. . . Some rule violations are alone sufficient to justify applying a manifest injustice standard of review or, worse, striking the brief. CR 76.12(8); *see also Roth*, 567 S.W.3d at 593; *Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 154 (Ky. App. 2012). Other violations are less profound; however, "there is an important purpose behind each of these rules." *Hallis*, 328 S.W.3d at 696 (referring by footnote to the purpose underlying some of the more mundane rules).

*Clark v. Workman*, 604 S.W.3d 616, 616-18 (Ky. App. 2020) (footnotes omitted).

Buckhorn's brief violates CR 76.12(4)(c)(v), requiring "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

Buckhorn provided no statement of preservation for any of its arguments. Notwithstanding these errors, this Court will not strike the brief and dismiss the appeal for issues presented that were properly preserved for review.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## ANALYSIS

On appeal, Buckhorn contends the trial court's decision is unsupported by the evidence and erroneous as a matter of law. Nevertheless, one issue not squarely addressed by Buckhorn is dispositive herein. That issue is

whether Buckhorn is bound by the trial court's determination in a separate case[7] that its deed is champertous.

The champerty statute, KRS 372.080, provides "[a]ny contract to prosecute an action for the recovery of any land in the adverse possession of another, for the whole or part of the land thus possessed, or for the whole or any part of the profits thereof, is void." Buckhorn claims ownership of the property at issue herein through a single deed[8] for a large tract of land located in Leslie and Perry Counties. Buckhorn had purchased the 9,800 acres from East Kentucky Land Corporation in January 2005 for $825,000. That deed was the subject of at least two separate lawsuits wherein it was claimed that Buckhorn's deed was void as champertous.

One of the two prior lawsuits occurred in Leslie County and resulted in the Leslie Circuit Court's order on August 11, 2014, holding that the entirety of Buckhorn's deed was void for champerty. That prior order was not appealed and became final.

In 1970, Kentucky adopted what is known as "claim preclusion" or "issue preclusion" in *Sedley v. City of West Buechel*, 461 S.W.2d 556 (Ky. 1970). Therein the Court held, "a person who was not a party to the former action nor in

---

[7] Leslie Circuit Court Action No. 08-CI-00023.

[8] A deed of correction regarding the same property was later recorded.

privity with such a party may assert res judicata against a party to that action, so as to preclude the relitigation of an issue determined in the prior action." *Id*. at 559. The doctrine is different from collateral estoppel in that it is unnecessary that the collateral litigation be among the same parties, and is also known as "offensive collateral estoppel." *See May v. Oldfield*, 698 F. Supp. 124 (E.D. Ky. 1988). The trial court specifically recognized in its final judgment herein that Buckhorn's deed at issue here is the same deed that it previously declared void due to champerty. This is undisputed by the parties. Consequently, the prior order is controlling, and the trial court properly followed its prior determination that Buckhorn's deed was void.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders entered by the Leslie Circuit Court are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Gary W. Napier
Drayer B. Spurlock
London, Kentucky

BRIEF FOR APPELLEES COMBS HEIRS, LLC; SAMUEL L. COMBS; LAURA COMBS; B.C. NOLAN TRUST BY VIRGINIA NOLAN CRAFT; CATHERINE B. NOLAN BY VIRGINIA NOLAN CRAFT; FRANK PETERS; AND PATRICIA S. PETERS:

Phillip Lewis
Hyden, Kentucky

BRIEF FOR APPELLEE ICG HAZARD, LLC:

Anne Chesnut
R. Clay Larkin
Lexington, Kentucky