RENDERED: OCTOBER 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0975-MR

GLEN DAVIS                                                                                    APPELLANT

v.       APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE BRIAN PRIVETT, JUDGE
ACTION NO. 21-CI-00126

BRENT CALDWELL; BRYCE
CALDWELL; AND GULAM ZADE

                                                                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON,
JUDGES.

THOMPSON, L., JUDGE: Glen Davis ("Appellant") appeals from an order of the

Scott Circuit Court dismissing his action against Brent Caldwell, Bryce Caldwell,

and Gulam Zade ("Appellees"). Appellant asserts that the circuit court erred in

failing to find that his complaint supports the claims of fraud and conspiracy to

commit fraud, and that the court improperly applied the Exoneration Rule. After

careful review, we find no error and affirm the order on appeal.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

In the interest of judicial economy, and as Appellant's underlying

criminal action was adjudicated on direct appeal by the Kentucky Supreme Court

in *Davis v. Commonwealth*, No. 2018-SC-000535-MR, 2020 WL 1302688 (Feb.

20, 2020), we adopt its rendition of the facts as follows:

> Glen A. Davis and his wife, Megan Davis, were married in 1995. After moving to Scott County, the couple had two daughters: M.D., born September 23, 2000, and a second daughter born in 2005. Their marriage began to fall apart and in 2012 Davis informed Megan that he wanted a divorce. Thereafter Megan noticed distressing changes in M.D.'s behavior. She became angry, moody, and afraid. She was very reluctant to spend time with Davis. M.D. was treated twice at a psychiatric facility for her self-harming behaviors, which included clawing and scratching at her own skin and banging her head against a wall. Upon being questioned by Megan in January 2013, M.D. disclosed that she had been abused. Megan reported the allegations to law enforcement on January 31, 2013.
>
> Police opened an investigation and arranged an interview for M.D. at a children's advocacy center. After viewing this interview via closed circuit television, a detective requested the family laptop and camera from Megan. The family laptop had four different user accounts – one for each family member. Police discovered four deleted images of what appeared to be child pornography dated January 13, 2010. They depicted a young female lying on a table exposing her genitals. Three of the four photos contained embedded

data which indicated they were taken with the family camera.

Megan positively identified M.D. in one of the photos and determined that they were taken during winter in the family home because she could see a portion of one of the family's seasonal place mats in the photos, as well as the wallpaper border in the background. The Commonwealth's digital forensic expert could not determine when the photos were uploaded from the camera to the laptop, how many times they were viewed, which of the four family accounts the images existed on before being deleted, or when they were deleted.

At trial M.D. testified regarding several instances of abuse. She stated that Davis touched her "private area" one afternoon in March 2007 when she was six years old. She also testified that in 2010, when she was nine years old, Davis photographed her genitals and he told her that he did so because he wanted her to see what she looked like "down there." She identified herself in the photos and also identified the walls and seasonal place mats on the table. She stated that Davis uploaded the photos to the family laptop and that they looked at them together. M.D. also testified that Davis raped her when she was home sick from school sometime in December 2012 when she was twelve years old. She stated that Davis overpowered her, and she was in excruciating pain during the rape. She was evaluated by the Children's Advocacy Center in Lexington and her physical exam was normal.

Davis was tried for four counts of use of a minor in a sexual performance and one count each of first-degree sexual abuse, incest, and second-degree rape. He testified at trial and denied all of M.D.'s allegations. The jury convicted him of four counts of use of a minor in a sexual performance and acquitted him on all other charges. The jury recommended a sentence of twenty years for each count to run consecutively for an eighty-

year sentence.  The trial court sentenced Davis to the statutory maximum of seventy years in prison[.]

*Id.* at \*1-2.

The Kentucky Supreme Court affirmed Appellant's conviction. Thereafter, Appellant filed a motion in Scott Circuit Court seeking relief from judgment pursuant to Kentucky Rules of Criminal Procedure ("RCr") 11.42.  At about the same time, Appellant, *pro se*, filed the instant civil action against Appellees in Scott Circuit Court.  Appellant alleged in his complaint that his trial counsel in the criminal proceeding, who are Appellees Brent Caldwell and Bryce Caldwell herein,[1] told Appellant in May 2014, and during the pendency of his criminal proceeding in Scott Circuit Court, that the Caldwells would need $15,000 to $20,000 from Appellant to hire forensic computer experts to examine Appellant's laptop on which the Georgetown, Kentucky, police had discovered 73 nude photographs of minor girls.  Appellant's parents forwarded the requested sum to the Caldwells.

According to Appellant, in June 2014, the Caldwells told him that they had engaged Logicforce Consulting, LLC ("Logicforce") in Nashville, Tennessee, to perform the examination of Appellant's computer.  Appellee Zade was the CEO of Logicforce.  Appellant alleged that after his conviction on the

---

[1] Brent Caldwell is Bryce Caldwell's father.

-4-

underlying criminal charges was affirmed by the Kentucky Supreme Court, he

contacted the Caldwells and requested all forensic reports produced by Logicforce.

According to Appellant, the Caldwells responded by producing for Appellant

several invoices from Logicforce totaling $15,125.00, but did not send him any

forensic reports.

Appellant contends that he then contacted Logicforce to request the

forensic reports, and Logicforce responded that it had no record of any such

reports.  It was on this basis that Appellant filed the instant action against

Appellees, alleging that the Caldwells and Logicforce colluded to defraud

Appellant of $15,125.00.[2]

The matter proceeded in Scott Circuit Court, and each defendant filed

a motion to dismiss the action.  The Caldwells argued that Appellant failed to

sufficiently plead his claim of fraud; that his claims for breach of oral contract and

civil conspiracy were barred by the statute of limitations; that the "Exoneration

---

[2] In addition to the Caldwells, the complaint designated "Logicforce LLC Gulam Zade, CEO [sic]" as a party defendant.  The Scott Circuit Court interpreted this as an action against Logicforce Consulting, LLC rather than Mr. Zade individually.  In its June 18, 2021 order dismissing Logicforce, the court noted that to the extent the complaint intended to assert claims against Mr. Zade, all such claims against him individually were also dismissed.  Appellant's notice of appeal designates the Caldwells and Mr. Zade as Appellees, but does not so designate Logicforce.

Rule"[3] bars any claim for legal malpractice Appellant intended to assert; and, that Appellant should not be permitted to enforce an illegal contract that the Caldwells claim does not exist. Zade asserted that Appellant failed to state a claim against Logicforce; a claim for civil conspiracy was barred by the statute of limitations; Logicforce performed the work it was hired to perform; and, Zade, in his capacity as CEO, is not responsible for the actions of Logicforce – a limited liability company.

On June 10, 2021, the circuit court conducted a hearing on the motions, where the parties made arguments in support of their respective positions. Appellant participated electronically via Zoom. The court then entered orders dismissing each Appellee,[4] and this appeal followed.

---

[3] The Exoneration Rule provides that an attorney may not be sued for malpractice after a criminal proceeding unless the defendant has first been exonerated. *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 141 (Ky. 2018).

[4] Two orders dismissing Brent Caldwell and Logicforce/Gulam Zade are found at pp. 224-228 of the record. The record does not contain a similar order dismissing Bryce Caldwell from the action. At p. 223 of the record, however, a handwritten notation appears on a docket sheet stating that the motions to dismiss Brent Caldwell, Bryce Caldwell, Logicforce and Zade are "all granted; orders to be tendered by [Defendants]." The docket sheet was signed by Judge Privett, stamped by the clerk of court, and entered into the record on June 10, 2021. As such, we will characterize the handwritten note as an order dismissing Bryce Caldwell. *See City of Taylorsville Ethic Commission v. Trageser*, 604 S.W.3d 305, 310 (Ky. App. 2020), which affirmed the validity of an order where the circuit court "memorialized its decision by including a handwritten notation . . . on a docket sheet calendar entry page bearing the judge's signature and the date at the bottom of the page."

## ARGUMENTS AND ANALYSIS

Appellant, *pro se*, argues that the Scott Circuit Court erred in sustaining Appellees' motions to dismiss the complaint. He argues that the complaint supports claims of fraud and conspiracy to commit fraud; that Appellees have refused to address their legal obligation to produce all documents in the criminal action; that Appellees misused the Exoneration Rule to gain a dismissal; that the circuit court improperly established new precedent providing immunity for attorneys who commit fraud; and, that the circuit court failed to follow proper procedure during and after the hearing.

In response, Appellees note that the sole issue raised by Appellant in his prehearing statement is whether the circuit court properly applied the Exoneration Rule in dismissing Appellant's complaint. They assert that pursuant to Kentucky Rules of Civil Procedure ("CR") 76.03(8), Appellant's appeal must be limited to issues raised in the prehearing statement unless good cause is shown via a timely motion. Appellees argue that since Appellant did not show good cause for considering issues not raised in his prehearing statement, we should not consider any arguments other than the one relating to the Exoneration Rule.

Within 20 days of the filing of the notice of appeal, an appellant must file and serve a "brief statement of the facts and issues proposed to be raised on appeal, including jurisdictional challenges[.]" CR 76.03(4)(h). A "party shall be

limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion." CR 76.03(8).

The only issue raised by Appellant in his prehearing statement is whether the circuit court properly applied the Exoneration Rule in dismissing Appellant's complaint. Appellant has not established good cause via a timely motion per CR 76.03(8) as to why we should consider issues he did not raise in his prehearing statement. Per CR 76.03(8), the other issues raised by Appellant are not properly before us and may not be considered. *See Sallee v Sallee*, 142 S.W.3d 697, 698 (Ky. App. 2004), holding that "[s]ince that issue was not raised either in the prehearing statement or by timely motion seeking permission to submit the issue for 'good cause shown,' CR 76.03(8), this matter is not properly before this court for review." *See also Miller v. Skiles*, 591 S.W.3d 426, 431 (Ky. App. 2019), which reaffirmed *Sallee* and held that the failure to comply with CR 76.03(8) constitutes a waiver of the issues not included in the prehearing statement. Accordingly, our review is limited to Appellant's argument that the circuit court improperly applied the Exoneration Rule in dismissing Appellant's complaint.

Further complicating matters, Davis has failed to comply with CR 76.12(4)(c)(v), which requires "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for

-8-

review and, if so, in what manner." Appellant has not demonstrated that any of the issues asserted in his written argument were preserved for appellate review. "Our options when an appellate advocate fails to abide by the Rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). And finally, per *Ford v. Commonwealth*, 628 S.W.3d 147,155 (Ky 2021), we may conduct a manifest injustice review only for errors in appellate briefing related to the statement of preservation.

Per *Sallee*, 142 S.W.3d at 698, issues not raised in the prehearing statement are "not properly before this court for review." As the Exoneration Rule was the only issue raised in the prehearing statement, it is the only issue we may now consider. However, since this issue was not preserved for appellate review per CR 76.12(4)(c)(v), we may only review it for manifest injustice. *Ford*, *supra.* We now undertake that review.

In *Lawrence*, *supra*, the Kentucky Supreme Court addressed the Exoneration Rule. It stated that,

> we adopt the following articulation of the Exoneration
> Rule: to survive a motion to dismiss for failure to state a
> claim in a professional malpractice case against a
> criminal defense attorney, the convicted client must plead

in his complaint that he has been exonerated of the underlying criminal conviction. He or she need not prove actual innocence, but they also may not rely solely upon a claim of actual innocence in the absence of an exonerating court decision through appeal or post-conviction order.

*Id.* at 141.

As Appellant has not preserved this issue for review, nor cited the record where the Exoneration Rule may have been argued or ruled upon, we have no basis for knowing if the Scott Circuit Court applied the Exoneration Rule in dismissing Appellant's complaint. Appellant asserts that the Caldwells improperly argued in favor of the Exoneration Rule below, but he does not argue that the circuit court improperly applied it. We will not examine the record in search of unpreserved error. *Elwell*, *supra.*

Further, the Exoneration Rule applies only to "a claim in a professional malpractice case[.]" *Lawrence*, 567 S.W.3d at 141. Appellant is not prosecuting "a professional malpractice case." Rather, Appellant asserts claims of fraud, conspiracy to commit fraud, and breach of oral contract. Thus, the Exoneration Rule has no bearing on Appellant's complaint. *Arguendo*, even if this were a professional malpractice case, "the convicted client must plead in his complaint that he has been exonerated of the underlying criminal conviction." *Id.* Appellant has not been exonerated of his underlying criminal conviction, nor has he so pled.

-10-

"Manifest injustice requires a showing of the probability of a different result, or that the error in the proceeding was of such magnitude as to be shocking or jurisprudentially intolerable." *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280 (Ky. App. 2016) (internal quotation marks and citation omitted). Appellant has not demonstrated the probability that a different outcome would have resulted from the circuit court's correct application of the Exoneration Rule, nor that the purported error in dismissing his complaint was shocking or jurisprudentially intolerable. Accordingly, we find no manifest injustice, and thus no error.

## CONCLUSION

For these reasons, we affirm the orders of the Scott Circuit Court dismissing Appellant's action.

ALL CONCUR.

BRIEF FOR APPELLANT:

Glen A. Davis
Lee Adjustment Center
Beattyville, Kentucky

BRIEF FOR APPELLEE BRENT CALDWELL:

Matthew W. Breetz
Bethany A. Breetz
Louisville, Kentucky

Joshua F. Barnette
Lexington, Kentucky

BRIEF FOR APPELLEE BRYCE CALDWELL:

J. Andrew Johnson
Owensboro, Kentucky

BRIEF FOR APPELLEE GULAM ZADE:

Jaron P. Blandford
Jason R. Hollon
Lexington, Kentucky